[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I BACKGROUND
On November 10, 1999, the Defendant, Excelsior, Inc., filed an application with the Newtown Conservation Commission for a permit to conduct regulated activities, including the building of a new road for a residential subdivision across a watercourse and two driveways across this watercourse. (Return of Record (ROR), No. 15.) In addition, the proposal included a crossing over an intermittent watercourse that is dry most of the year and an alteration of 90 linear feet of the channel of this intermittent watercourse. (ROR, No. 15.) The Plaintiff, Mary McNee, now appeals from the Commission's granting of the permit.
The application came before the Commission on several occasions. At the request of the Commission, the application was reviewed by the town engineer, health director and fire marshal. None of the responses from these officials indicated any objections to or problems with the CT Page 14568 application. (ROR, Nos. 9, 10, 11.) On February 9, 2000, the Plaintiff's engineer made a presentation to the Commission explaining revised maps and a revised drainage report which it had submitted. (ROR, Nos. 30, 35.)
For its February 23, 2000 meeting, the Commission received a report from C. Stephen Driver, it's conservation official. (Supplemental ROR, No. 37.) Driver noted that the plans, as modified, included a full erosion and sedimentation plan, a conservation easement on two lots in the most sensitive area, a reduction of the number of brook crossings from three to two, and that the wetland crossing at the entrance from Alpine Circle, although still significant, had been modified to reduce the impact from the filling. At this February 23 meeting, the Commission unanimously approved the application with eight conditions. (ROR, Nos. 2, 32.) On March 9, 2000, Driver submitted a memorandum to the Planning and Zoning Commission advising that he had no reason not to recommend the proposal for approval:
 The site design has been significantly modified since it was originally submitted. It now included a full erosion and sedimentation plan, a modification of the plan to improve the roadway/driveway connection and to include an integrated conservation easement, trial and open space. As revised the erosion and sedimentation plan is in compliance with the State Guidelines for Erosion and Sedimentation. The original site plan did not comply with these guidelines.
As modified, I do not have any reason to not recommend approval.
(ROR, No. 2.)
The Commission's approval was published on March 3, 2000, and on March 13, 2000, the Plaintiffs commenced this appeal. The Commission did not state any reasons for its approval. The Plaintiff appeals on the grounds that the Commission did not adhere to its own regulations by failing to determine whether or not the proposed activity involved a "significant impact activity," that the decision did not comply with the health district's requirement concerning water supply, that the decision does not comply with General Statutes § 22a-42f, and that no permit for new discharge was issued pursuant to General Statutes § 22a-430 or because there was no registration under General Statutes § 22a-430b.
 II JURISDICTION CT Page 14569
Appellate jurisdiction in an administrative appeal exists only by statute and can be acquired and exercised only in the strict manner prescribed by statute. Munhall v. Inland Wetlands Commission, 221 Conn. 46,50 (1992).
"General Statutes 22a-36 through 22a-45 constitute the Inland Wetlands and Watercourses Act. . . ." Pomazi v. Conservation Commission,220 Conn. 476, 482 (1991); see also General Statutes § 22a-37. General Statutes § 22a-43(a) provides that "any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action made pursuant to [§§ 22a-36 to 22a-45, inclusive] may, within the time specified in subsection (b) of section 8-8
from the publication of such regulation, order, decision or action, appeal to the superior court for the judicial district where the land affected is located. . . ."
"Pleading and proof that the Plaintiffs are aggrieved within the meaning of the statute is a prerequisite to the trial court's jurisdiction over the subject matter of the appeal." Munhall v. InlandWetlands Commission, supra, 221 Conn. 50. "Aggrievement is a question of fact for the trial court and the Plaintiff has the burden of proving that fact." Water Pollution Control Authority v. Keeney, 234 Conn. 488, 493
(1995). There are two categories of aggrievement: statutory and classical. Cole v. Planning Zoning Commission, 30 Conn. App. 511, 514
(1993). In order to be statutorily aggrieved by the Commission's decision, the Plaintiffs must plead and prove ownership of abutting land or land within ninety feet of the subject wetlands. See General Statutes § 22a-43(a). In order to show classical aggrievement, the Plaintiffs must satisfy a two-part test: first, they must demonstrate a specific personal and legal interest in the subject matter of the Commission's decision; and second, they must show that the decision of the Commission caused injury to that specific personal and legal interest. See Munhallv. Inland Wetlands Commission, supra, 221 Conn. 51.
In the instant case, the Plaintiff is the abutting property owner, and therefore is aggrieved and has standing to bring this appeal.
 III JUDICIAL REVIEW
"[T]he [inland wetlands] statutory scheme [was] designed to give local agencies broad discretion to oversee wetland activities." (Citations omitted.) Rockville Fish Game Club v. Inland Wetlands Commission, CT Page 14570231 Conn. 451, 461 (1994). "Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions. This cautionary advice is especially apt whenever the court is reviewing a decision of a local commission composed of laypersons." (Citations omitted; internal quotation marks omitted.) Samperi v. Inland WetlandsAgency, 226 Conn. 579, 596 (1993).
"In reviewing an inland wetlands agency decision . . . the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial. . . ." (Internal quotation marks omitted.) Samperi v. InlandWetlands Agency, supra, 226 Conn. 587-88. In applying the substantial evidence standard, it has been held that it is improper for the reviewing court to reverse an agency decision simply because the agency failed to state its reasons upon the record. Id., 588. "The reviewing court. . .must search the record of the hearings before that commission to determine if there is an adequate basis for its decision." (Citations omitted, internal quotation marks omitted.) Id., 588-89.
"[T]he burden of showing that the agency has acted improperly rests upon the one who asserts it." (Citations omitted; internal quotation marks omitted.) Connecticut Resources Recovery Auth. v. Planning Zoning,225 Conn. 731, 751 (1993). "[T]he Plaintiff must establish that substantial evidence does not exist in the record to support the agency's decision. . . . The reviewing court may grant relief from the agency's decision only where the decision is arbitrary, illegal or not reasonably supported by the evidence." (Citations omitted; internal quotation marks omitted.) Keiser v. Conservation Commission, 41 Conn. App. 39, 41
(1996).
In approving the Plaintiff's application, the Commission had before it, together with other items in the record, the following: the application with its maps, erosion control and sedimentation plan, road and road improvement plans, construction details and feasibility study, field investigations by staff and members, information on file, discussions with and presentations by the applicant's representatives, plan revisions, staff reports, a soil report with full erosion and sedimentation plan and proposals for conservation easements and reviews by the town engineer, health director, and fire marshall. (ROR, Nos. 6, 9, 10, 11, 15, 16, 17, 18, 19, 34, 35.)
The Plaintiff briefed four reasons for overturning the Commission's decision. Any other claims are abandoned. Shaw v. Planning Commission,5 Conn. App. 520, 525 (1985). CT Page 14571
 A Failure To Abide By The Regulations
The Plaintiff claims that the Commission's decision is contrary to law because the Commission failed to determine whether or not the proposed activity involves "significant impact activity" pursuant to § 7.6 of its regulations.
Section 7.6 requires that an application provide additional information "[i]f the proposed activity involves a significant impact activity asdetermined by the agency, as defined in section 2 of the regulations . . ." A "[s]ignificant impact activity" is defined as "any activity, including, but not limited to, the following activities which may have amajor effect or significant impact.'" (Emphasis added.)
(ROR, No. 36.)
The Plaintiff contends that the evidence before the Commission demonstrated that the proposed activities were "significant impact" activities, and therefore, a public hearing was required. General Statutes § 22a-42a(c)(1) details the circumstances under which a public hearing is required. It provides, in relevant part, as follows:
 The inland wetlands agency shall not hold a public hearing on such application unless the inland wetlands agency determines that the proposed activity may have a significant impact on wetlands or watercourses. a petition signed by at least twenty-five persons requesting a hearing is filed with the agency not later than fifteen days after the date of receipt of such application, or the agency finds that a public hearing regarding such application would be in the public interest. An inland wetlands agency may issue a permit without a public hearing provided no petition
provided for in this subsection is filed with the agency not later than fifteen days after the date of receipt of the application.
(Emphasis added.)
Thus, in the absence of the requisite petition, which was not submitted in this case, the determination of whether to hold a public hearing is totally within the discretion of the Commission. Moreover, rather than requiring a hearing, § 22a-42a provides that in the absence of a CT Page 14572 petition the Commission shall not hold a hearing unless the agencydetermines that the proposed activity may have a significant impact orthe agency finds that a public hearing would be in the public interest and expressly permits issuance of a permit without a public hearing.
Whether an inland wetlands agency correctly decides a proposed activity significant under the definition of the regulations is a question which is reviewed under the substantial evidence test. Rockville Fish GameClub, Inc. v. Inland Wetlands Commission, 231 Conn. 451, 459 (1994). If substantial evidence exists in the record to support the Commission's findings, its decision must stand. Huck v. Inland Wetlands andWatercourses Agency, 203 Conn. 525, 541 (1987). The evidence is sufficient if it affords a substantial basis from which the fact and issue can reasonably be inferred. Rockville Fish Game Club, Inc., supra, 459. Substantial evidence is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Samperi v. Inland WetlandsAgency, 226 Conn. 579, 588 (1993). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a trace of evidence and must do more than create a suspicion of the existence of the facts to be established. Board ofEducation v. Commission on Human Rights and Opportunities, 176 Conn. 533,538 (1979).
In this case, with the evidence before it, the Commission determined to issue the permit without a public hearing indicating its determination that, as related to inland wetlands and watercourses, the proposed activity was minor and insignificant. That the Plaintiff might see the situation differently is not grounds for the court to disturb the action of the Commission. With all that was presented to the Commission, there was more than substantial evidence to support both the Commission's decisions to grant the application and to do so without a public hearing. Among the items available to it were the application with its maps, erosion control and sedimentation plan, road improvement plans, a feasibility study, staff investigations and reports, plan revisions, a soil report, and proposals for conservation easements. (See e.g., ROR, Nos. 6, 9, 10, 11, 15, 16, 17, 18, 19, 30, 34, 35.)
 B Requirements Concerning Water Supply
The Plaintiff provided no authority to support her claims that the Inland Wetlands Commission has jurisdiction or authority to regulate water supply sources to subdivision lots or regulate wells and/or ground CT Page 14573 water, or her claim that decisions as to these matters are required by the Commission prior to its having granted the present application. The Plaintiff has failed to demonstrate any basis for these claims regarding water supply to the subject property. An asserted ground for appeal, merely mentioned but not briefed beyond a bare assertion of the claim, is deemed to have been waived. Bridgeport Hospital v. Comm. On Human Rights Opp., 232 Conn. 91, 115 (1995); Hayes v. Smith, 194 Conn. 52, 66 n. 12 (1984). Therefore, the Defendant cannot prevail on this ground.
 C Notice to Adjacent Water Company
The Plaintiff asserts that notice was required to Olmstead Water Supply Co., the owner of property within 200 feet of the proposed project. She claims that the decision of the Commission must be overturned because the Commission failed to consider the impact of the development on the Water Company. The Plaintiff has the burden of proof on these issues but has failed to provide any law or facts to support these claims.
The record contains evidence that the Commission was aware of the Water company's existence. The Commission had been provided with a letter from the Director of Environmental Health on the subject. (ROR, No. 10.) This letter, dated December 3, 1999, confirms that the Commission was alerted to the Water Company's proximity to the property prior to the date of the Commission's decision. The Plaintiff has failed to demonstrate either that the Commission was required to consider this issue or that it failed to do so. The Commission is presumed to have done their duty unless the contrary is demonstrated. Huck v. Inland Wetlands and WatercoursesAgency, supra, 203 Conn. 537. Even had the Plaintiff shown lack of notice to the Water Company, the decision of the Commission would not have been affected because only the Water Company had standing to raise this issue. The notice requirement of § 22a-42f is a personal notice provision. October Twenty-Four v. Inland Wetlands and WatercoursesCommission, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 449259 (August 6, 1993, Langenbach, J.).
 Notice to the clerk of an adjoining town is notice to a specific recipient and is therefore "akin to a personal notice statute." Lauer v. Zoning Commission, 220 Conn. 455, 461 (1991). Even if the city was not given notice or given improper notice, "failure to give personal notice to a specific individual is not a jurisdictional defect. . .and lack of personal notice may be waived by the party entitled to it." (Citations omitted.) Id., at 462. . . . Finally, only the city of CT Page 14574 New Britain, not the plaintiff, is entitled to raise the issue of noncompliance with the notice provisions of 22a-42b and 22a-42c. See Lauer, 220 Conn. at 465.
Id.
The lack of a personal service requirement was addressed on a similar issue in Boris v. Garbo Lobster Company, Inc., Superior Court, judicial district of New London at New London, Docket No. 548853 (December 3, 1999, Purtill, J.T.F.) In that case, Judge Purtill determined:
 It is also doubtful that any failure by the Commission to give notice to the HMC as required by § 22a-113p would constitute a jurisdictional defect which plaintiffs could take advantage of. Our Supreme Court has distinguished between statutorily required published notice to the general public and statutorily required personal notice to specific entities. See e.g., Lauer v. Zoning Commission, 220 Conn. 455, 461 (1991). The court has held that failure to give newspaper notice to the public is a subject matter jurisdictional defect. Id., Jarvis Acres, Inc. v. Zoning Commission, 163 Conn. 41, 44
(1972). The court has also held that failure to give personal notice to a specific individual is not a jurisdictional defect and that lack of such notice may be waived by the party entitled to notice. Lauer v. Zoning Commission, supra. 461-62. It is much more likely that the unspecified notice requirement of § 22a-113p was included by the legislature for the benefit only of the HMC and was never intended to affect a general notice to the public. It must therefore be concluded that any failure to give the notice required under this statute does not create a jurisdictional defect which would render the decision of the Commission void.
Id.
No appeal or claim of lack of notice has been made by the Water Company. The Plaintiff's appeal cannot be sustained on this ground.
 D Discharge Permit CT Page 14575
The Plaintiff claims that General Statutes § 22a-430 requires, under certain circumstances, either a permit or a discharge management plan registered pursuant to an existing general permit, that the Defendant provided neither, and because the plan proposed no "storm water detention" for the collected runoff from the new road and from the resurfacing of Alpine Circle, it should have been rejected. General Statutes § 22a-430
provides that:
 (a) No person or municipality shall initiate, create, originate or maintain any discharge of water, substance or material into the waters of the state without a permit for such discharge issued by the commissioner. Any person who initiated, created or originated a discharge prior to May 1, 1967, and any municipality which initiated, created or originated a discharge prior to April 10, 1973, for which a permit has not been issued pursuant to this section, shall submit an application for a permit for such discharge on or before July 1, 1987. Application for a permit shall be on a form prescribed by the commissioner, shall include such information as the commissioner may require and shall be accompanied by a fee of twenty-five per cent more than the amount established in regulations in effect on July 1, 1990. On and after July 1, 1991, such fees shall be as prescribed by regulations adopted by the commissioner in accordance with chapter 54. The commissioner shall not issue or renew a permit unless such issuance or renewal is consistent with the provisions of the federal Clean Water Act (33 U.S.C. § 1251 et seq.).
(Emphasis added.)
The statute contains no requirement that such permit be obtained beforeapplication to or decision by a town Inland Wetland Commission on an application to permit a regulated activity. If a discharge permit is required by this applicant, it would be required prior to its proceeding to initiate, create, originate or maintain any discharge, and such application would be to the Commissioner of Environmental Protection, not to the local wetland commission. Whether a discharge permit is required, and when, are not questions within the jurisdiction of the Newtown Inland and Wetland Commission. The Plaintiff's appeal cannot be sustained on this ground.
 CONCLUSION CT Page 14576
The Plaintiff has failed to prove that the decision of the Commission was illegal, arbitrary or an abuse of discretion, and therefore, the Plaintiff's appeal is dismissed.
Hiller, J.